**[Cite as *State v. Cruz*, 2025-Ohio-1154.]**

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Robert G. Montgomery, P.J. |
| Plaintiff - Appellee | : | Hon. Kevin W. Popham, J. |
| | : | Hon. David M. Gormley, J. |
| -vs- | : | |
| | : | |
| SANDRA CRUZ | : | Case No. 2024 CA 032 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Fairfield County
                             Municipal Court, Case No.
                             TRC2400333

JUDGMENT:                    Affirmed

DATE OF JUDGMENT:            March 31, 2025

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

Andrew D. Semelsberger                    James L. Dye
Assistant City Prosecutor                 P.O. Box 161
136 W. Main Street                        Pickerington, Ohio 43147
Lancaster, Ohio 43130

*Gormley, J.*

**{¶1}** Defendant Sandra Cruz appeals her conviction on one misdemeanor charge of operating a vehicle while under the influence of alcohol or drugs following her jury trial in Fairfield County. Cruz argues that she was denied effective assistance of counsel at trial and that her conviction was against the manifest weight of the evidence. For the reasons explained below, we affirm the trial court's judgment.

## Facts and Procedural History

**{¶2}** In January 2024, Ohio State Highway Patrol trooper Tawanna Young initiated a traffic stop of a vehicle after she observed the driver — Cruz — make a wide turn and fail to use a turn signal. Once the moving vehicle was stopped at the roadside, Trooper Young — while standing near the driver's-side door of the vehicle — smelled alcohol on Cruz's breath and noticed that Cruz's eyes were glassy and bloodshot. Young also smelled the odor of marijuana coming from the vehicle, and she noticed that Cruz's movements were slow. Cruz told Young that she — Cruz — had not been drinking alcohol that evening. Young asked Cruz to step out of the vehicle to complete a field-sobriety test.

**{¶3}** Trooper Young began with a horizontal-gaze-nystagmus (HGN) test to look for involuntary jerking in Cruz's eyes because — according to Young's trial testimony — that kind of involuntary eye movement can be a sign of impairment. Young testified that she observed six out of the six signs of impairment that she was trained to look for. After that test was completed, Cruz admitted that she had consumed one drink earlier that evening. Trooper Young also observed vertical-gaze nystagmus (VGN) in Cruz's eyes,

which Young indicated in her testimony at trial can show a high dose of alcohol for an individual.

**{¶4}** Trooper Young next administered a lack-of-convergence test, which is, Young said at trial, designed to detect whether an individual is under the influence of marijuana. Young testified that Cruz's left eye failed to converge twice, which indicated to Young that Cruz had smoked marijuana.

**{¶5}** Trooper Young administered two additional tests — a divided-attention test using the alphabet and a walk-and-turn test — and observed signs of impairment with each one. Young placed Cruz under arrest for operating a vehicle under the influence and took her to the police station. There, Cruz refused to take a breathalyzer test.

**{¶6}** Cruz was later convicted of driving under the influence at her jury trial in June 2024. She now appeals.

## Cruz's Counsel Was Not Ineffective for Failing to File a Suppression Motion

**{¶7}** In her first assignment of error, Cruz argues that her trial counsel was ineffective because he failed to file a motion to suppress the results of the field-sobriety tests.

**{¶8}** The Sixth Amendment, of course, provides that an accused is entitled to the assistance of counsel in a criminal case. U.S. Const., amend. VI. For a conviction to be reversed based on a claim of ineffective assistance of counsel, a defendant must first prove that his or her counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Next, the defendant must show that he or she was prejudiced by counsel's deficient performance. *Id.* This requires the defendant to show that the

attorney's errors "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

{¶9} The failure of trial counsel to file a suppression motion does not by itself constitute ineffective assistance of counsel. *State v. Morgan*, 2019-Ohio-2785, ¶ 25 (5th Dist.), citing *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000). To show that counsel was ineffective for failing to file a suppression motion, "'a defendant must show: (1) a basis for the motion to suppress; (2) that the motion had a reasonable probability of success; and (3) a reasonable probability that suppression of the challenged evidence would have changed the outcome at trial.'" *State v. Grove*, 2020-Ohio-1123, ¶ 40 (5th Dist.), quoting *State v. Phelps*, 2018-Ohio-4738, ¶ 13 (5th Dist.). A defendant will not prevail on a claim of ineffective assistance of counsel when the decision not to file a suppression motion "'was a tactical decision, there was no reasonable probability of success, or there was no prejudice,' or where counsel could have reasonably decided that filing such a motion would have been futile, even if there is evidence in the record to support such a motion." *Phelps* at ¶ 13, quoting *State v. White*, 2018-Ohio-18, ¶ 39 (4th Dist.).

{¶10} In a criminal prosecution for operating a vehicle under the influence of alcohol, an officer may testify regarding the results of a field-sobriety test if the state provides clear and convincing evidence that the test was administered in substantial compliance with the testing standards set by the National Highway Traffic Safety Administration (NHTSA). R.C. 4511.19(D)(4)(b). An officer administering a test need not read instructions from the NHTSA manual word for word. *State v. Secoy*, 2009-Ohio-5100, ¶ 17 (5th Dist.).

**{¶11}** After a review of the record, we do not find grounds for the filing of a motion to suppress the field-sobriety tests, and we also see no reasonable probability that the motion would have been granted even had it been filed. Cruz's argument to the contrary focuses first on Young's alleged failure to conduct the HGN test as required by the NHTSA manual. Cruz's assertion is based only on the fact that Young instructed Cruz to place her hands on her own cheeks rather than at her sides.

**{¶12}** According to the NHTSA manual, an officer conducting an HGN test should tell the suspect that the suspect's eyes are going to be checked, that the suspect should keep his or her head still and should follow the stimulus — often a pen or the officer's finger — with only the eyes, and that the suspect should continue to keep the eyes focused on the stimulus until told to stop. *State v. Secoy*, 2009-Ohio-5100, ¶ 16, 18 (5th Dist.). After providing the suspect with these initial instructions, the officer should position a stimulus 12 to 15 inches away from the suspect's nose and slightly above eye level. *Id.* at ¶ 16. The officer is next instructed to check the suspect's pupils to determine if they are of equal size. *Id.* When conducting the test, the officer should examine the suspect's ability to track the stimulus and whether that tracking is smooth. *Id.* Finally, the officer should check the suspect for nystagmus at maximum deviation and for onset of nystagmus prior to 45 degrees. *Id.*

**{¶13}** After a review of the record, we find that Trooper Young administered the HGN test in substantial compliance with the NHTSA standards. Prior to administering the test, Young asked Cruz if she had any medical problems with her eyes that would affect her ability to follow the tip of a pen. Cruz said no. Young told Cruz that Young was going

to check for equal tracking and pupil size in Cruz's eyes and that Cruz should "not . . . anticipate, just follow" the tip of the pen with her eyes.

{¶14} Young testified at Cruz's trial that there were three parts to the HGN test: (1) lack of smooth pursuit; (2) distinct and sustained nystagmus at maximum deviation; and (3) onset prior to 45 degrees. Young testified that she observed all three of these signs of impairment in Cruz's eyes during the test. Young's testimony is corroborated by and consistent with the video footage from Young's body-worn camera that was introduced at Cruz's trial.

{¶15} We are unpersuaded by Cruz's argument that Young failed to substantially comply with the NHTSA standards. To be sure, Young instructed Cruz to place her hands on her own cheeks instead of at her sides. Young testified that her reason for doing so, though, was simply to allow Young to protect her own safety by enabling her to keep an eye on Cruz's hands during the test. As discussed above, Young testified at trial about the three distinct parts of the HGN test and stated that she observed in Cruz's eyes all six of the clues that she is trained to look for. Cruz does not provide any authority to support her claim that the placement of her hands on her cheeks during the test would have affected the HGN test's outcome or might have prompted the trial judge to grant a suppression motion had such a motion been filed.

{¶16} Cruz argues secondly that her trial counsel's failure to file a suppression motion led to the admission of damaging trial testimony from Trooper Young about the VGN test and its significance. Nothing in the record, however, indicates that Young's administration of the VGN test fell short of NHTSA's standards, and Cruz does not even suggest that Young erred when explaining that test at the roadside or when administering

it to Cruz there.  Even so, Cruz curiously claims that had a motion to suppress been filed on her behalf, the judge would have granted such a motion.  We fail to follow Cruz's logic on this point.

{¶17}  And surely if — as seems to be the case — Cruz's concern with the VGN focuses not on the way in which that test was administered but rather on Trooper Young's trial testimony about the significance of the test, Cruz was free at the trial to cross-examine Young about the test even though no suppression motion had been filed.  Young testified at the trial that her training has led her to understand that the presence of VGN in a person's eyes can indicate that that person has ingested a particularly high dose of alcohol for that individual.  After Young gave that testimony at the trial, Cruz was free during her cross-examination of Young to inquire about other possible reasons – including health-related reasons – why VGN might be present.  Again, any failure on her trial lawyer's part to seek the suppression of the VGN results is unrelated to that lawyer's ability to try to poke holes in the reliability of Young's trial testimony about the VGN.

{¶18}  Because Cruz's ineffective-assistance argument here targets only her trial lawyer's failure to file a suppression motion, and because Cruz identifies no reason why such a motion addressing the administration of the VGN should have been filed or would have been granted, we readily conclude that Cruz's ineffective-assistance claim concerning the VGN test is not a sound one.

{¶19}  In short, any motion to suppress concerning either the HGN test or the VGN test would not have been granted, and the tactical or practical decision by Cruz's trial counsel to skip the filing of such a motion and to focus instead on trying to win the case at trial cannot rightly be characterized as deficient.  Cruz's ineffective-assistance

challenge to her conviction falls well short of the mark, and we overrule her first assignment of error.

**Cruz's Conviction Was Not Against the Manifest Weight of the Evidence**

**{¶20}** In her second assignment of error, Cruz contends that her conviction was not supported by the manifest weight of the evidence.

**{¶21}** In determining whether a conviction was against the manifest weight of the evidence, an appellate court acts as a thirteenth juror, and "after 'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be [reversed] and a new trial ordered.'" *State v. Hane*, 2025-Ohio-120, ¶ 20 (5th Dist.), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). The reversal of a conviction on manifest-weight grounds should occur only in "the 'exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*

**{¶22}** "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them.'" (Emphasis in original.) *Thompkins* at 387. "[A]n appellate court will leave the issues of weight and credibility of the evidence to the factfinder, as long as a rational basis exists in the record for its decision." *State v. Sheppard*, 2025-Ohio-161, ¶ 66 (5th Dist.).

**{¶23}** Cruz's conviction was not against the manifest weight of the evidence. Cruz

did not testify during trial or present any evidence that would support her claim that she was not operating her vehicle while impaired. The evidentiary conflict that Cruz points to arises from her roadside statement to Young that she had consumed only "one" drink that evening.

**{¶24}** Trooper Young testified during trial that Cruz initially claimed that she had not consumed any alcohol that evening, but that Cruz later admitted — only after Young confronted Cruz about the signs of impairment she observed during the HGN test — that she had consumed one drink that evening. Young also testified to her 23 years of experience as a law-enforcement officer and stated that she attends annual training on the detection and apprehension of impaired drivers. Young testified that she smelled alcohol and marijuana when she initiated the stop of Cruz's car and that Cruz had glassy and bloodshot eyes. Young conducted an HGN test, a VGN test, a lack-of-convergence test, a divided-attention test using the alphabet, and a walk-and-turn test. Young testified that Cruz showed signs of impairment with each of these tests. Further, the video footage of Young's interaction with Cruz was played for the jury, and that footage corroborated Young's testimony.

**{¶25}** After reviewing the record, we find that a rational basis exists to support the jury's conclusion that Cruz was operating her vehicle while under the influence of alcohol, of marijuana, or of a combination of alcohol and marijuana. The jury did not lose its way or create a manifest miscarriage of justice in finding Young's testimony more credible than Cruz's inconsistent roadside statements regarding her alcohol consumption. Cruz's conviction was, therefore, not against the manifest weight of the evidence. Cruz's second assignment of error is overruled.

**{¶26}** For the reasons explained above, we affirm the judgment of the trial court.

By: Gormley, J.

Montgomery, P.J. and

Popham, J. concur.